UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| IDEXX LABORATORIES, INC., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Docket no. 2:15-cv-321-GZS |
| | ) |
| TRIPLE R VETERINARY, PLLC, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**ORDER ON PENDING MOTIONS**

This matter is set for a bench trial, to commence on August 23, 2016, on the damages owed by Defendant Triple R Veterinary in connection with its stipulated liability under the IDEXX Reference Laboratory Preferred Customer Agreement with a start date of January 1, 2012 (the "Parent Agreement"). The parties have filed a variety of pretrial motions. Specifically, before the Court are the following motions: (1) Defendant's Motion to Retain Confidentiality Designations (ECF No. 20); (2) Defendant's Motion in Limine Regarding Measure of Plaintiffs' Damages (ECF No. 50); and (3) Plaintiffs' Motion in Limine to Exclude Extrinsic Evidence (ECF No. 51). For reasons briefly explained herein, the Court DENIES each of these three Motions (ECF Nos. 20, 50 & 51). All of these denials are made without prejudice to either party renewing their objections at trial as particular evidence is presented. Additionally, as explained below, to the extent that the motions raise issues that the Court believes go to the heart of the parties' remaining dispute, the Court concludes those issues are not amenable to resolution via motions in limine and can only be resolved on the more fully developed post-trial record.[1]

---

[1] As noted in the Report of Final Pretrial Conference and Order (ECF No. 29), the Court will require the parties to submit proposed findings of fact and conclusions of law after the presentation of evidence concludes. On the last day

**1. Defendant's Motion to Retain Confidentiality Designations (ECF No. 20)**

Via this Motion, Defendant Triple R Veterinary, PLLC ("Triple R") seeks to retain the designation of "Confidential—Attorneys' Eyes Only" that it applied to 243 pages of its document production (TRV00001-TRV00243) that relate to its ongoing business relationship with Antech Diagnostics (hereinafter, the "Antech documents").

After taking the Motion to Retain Confidentiality Designations under advisement, the Court asked for the Antech documents to be submitted in camera for review. Having now reviewed the documents as well as the written submissions of the parties in connection with the Motion to Retain Confidentiality Designations, the Court DENIES the Motion, finding that Triple R waived the designation and that, in any event, it has not shown good cause for its ongoing categorical designation of the Antech documents as "Attorneys' Eyes Only."

The Consent Confidentiality Order (ECF No. 18) entered in this case allows for the production of materials with the designation "Confidential—Attorneys' Eyes Only." It also provides that if opposing counsel objects to any designations, it may serve an objection on the designating party within thirty days. (Confidentiality Order ¶ 8(a).) The Confidentiality Order then provides for a fifteen day period to meet and confer. If an agreement is not reached that resolves the objection, the Order clearly requires the designating party to file a motion to retain its designation within thirty days of service of the objection and "show good cause for the . . . designation." (Confidentiality Order ¶ 8(c).) "The failure to file the motion waives the . . . CONFIDENTIAL—ATTORNEYS' EYES ONLY designation." (Id.)

Here, IDEXX objected to the designation of the Antech documents on February 18, 2016. By all accounts, the parties conferred, but no resolution was reached. Both sides agree that the

---

of trial, the Court anticipates that the parties will be prepared to discuss a schedule for these submissions, taking into account the time necessary to obtain an official transcript from the court reporter.

thirty-day deadline for Triple R to file its motion passed on March 21, 2016. Triple R then filed the pending Motion ten days later on March 31, 2016. Thus, under the plain and clear terms of the Confidentiality Order, the designation was waived.

Assuming the Court could somehow excuse this delay, the Court nonetheless concludes that the Motion does not categorically provide good cause for the continuing designation. First, Triple R maintains that the documents are irrelevant to the issues remaining for trial. On this point, the Court disagrees. For reasons more fully explained in the Court's ruling on Defendant's Motion in Limine Regarding Measure of Plaintiffs' Damages (ECF No. 50), the Court does believe that at least some of the Antech documents may be relevant under IDEXX's theory of damages, and the Court intends to allow IDEXX to present evidence in support of that theory at trial. As explained in Plaintiffs' June 6, 2016 Proffer, the Court is also satisfied that IDEXX may be able to establish that some of the Antech documents are relevant to the credibility of certain witnesses Triple R has listed as trial witnesses.

Second, Triple R maintains that any lifting of its confidentiality designation on the Antech documents will give IDEXX "an unfair competitive advantage," given that IDEXX and Antech are "the dominant players" in a "narrow industry." (Trautwein Decl. (ECF No 20-1) ¶ 11.) While even IDEXX acknowledges that Antech's pricing information (a subset of the information contained within the Antech documents) "potentially raises competitive concerns," the Court is satisfied based on the exhibits submitted by Plaintiffs that similar information related to Antech pricing has been publicly disclosed in the past. (Pls. Response (ECF No. 22) at 6-7 & Exs. A & B.) Thus, Triple R simply has not met its burden of establishing good cause on a timely basis to support the categorical sealing of the Antech documents.

To the extent it aids the parties in preparation for the upcoming public trial, the parties are advised that the Court anticipates that each and every exhibit received at trial will be publicly available. Upon a showing of good cause, the Court may consider allowing the submission of a redacted document as the exhibit if the redacted version will still allow the Court to consider and decide the damages issues being presented. However, the parties should not anticipate that the Court will allow the sealing of exhibits simply because they were produced with a confidentiality designation.[2] (See Confidentiality Order ¶¶ 9 & 10.) Similarly, the parties should not anticipate that the Court will be able to publicly explain its post-trial decision to award damages in a certain amount without any reference to the numbers relevant to the calculation of the damages.

2. **Defendant's Motion in Limine Regarding Measure of Plaintiffs' Damages (ECF No. 50)**

Defendant seeks a pretrial ruling that the measure of IDEXX's lost profits as a result of Triple R's breach must be calculated by using the enumerated minimum qualifying annual purchase levels in the contract[3] to determine the anticipated lab revenue for the term of the contract and then subtracting the revenue IDEXX actually received from Triple R for reference lab services and costs saved due to the breach.[4] IDEXX objects and maintains that it can establish at trial that its lost profits from Triple R's breach of a multi-year agreement exceed the enumerated minimum qualifying annual purchase levels.

---

[2] The Court notes that neither party identified any issues with the use of confidential documents at trial in their respective pretrial memoranda as required by paragraph 10 of the Consent Confidentiality Order.

[3] In the contract these enumerated amounts are titled the "Qualifying Annual Reference Lab Purchase Level" and the "Qualifying Annual In-house Consumable Purchase Level," respectively. See Parent Agreement at IDEXX-120 (ECF No. 50-1 at PageID # 490).

[4] Defendant's Motion acknowledges that Plaintiff would be additionally entitled to "pre-judgment interest" on that amount. See Def. Motion (ECF No. 50) at 8.

Given the undisputed application of Maine law to the breach of contract at issue here, the purpose of the damage award is to "'place the plaintiff in the same position as that enjoyed had there been no breach.'" Williams v. Ubaldo, 670 A.2d 913, 917 (Me. 1996) (quoting Marchesseault v. Jackson, 611 A.2d 95, 98 (Me. 1992)). Thus, Maine law aligns with the Restatement in calling for breach of contract damages to be based on "the injured party's 'expectation interest,' defined as its 'interest in having the benefit of [its] bargain by being put in as good a position as [it] would have been in had the contract been performed . . . .'" Deering Ice Cream Corp. v. Colombo, Inc., 598 A.2d 454, 456–57 (Me. 1991) (quoting Restatement (Second) of Contracts § 344 (1981)). To arrive at the "expectation interest," it is anticipated that the damage award will reflect deductions for "any cost or other loss that [the injured party] is able to avoid by not having to perform its side of the contract, as well as . . . any net benefit that the injured party could reasonably realize as a result of the termination of the contract." Id. (citing Restatement (Second) of Contracts §§ 347, 350).

Given the exclusivity terms of the breached contract, IDEXX is entitled to present evidence of how much it would have actually earned had Triple R complied with the exclusivity term, including the portion of that term that required Triple R to transition "practices acquired after the Start Date." In its Response to this Motion (ECF No. 44), IDEXX represented that seven such additional practices were added. (See id. at 4 n. 2.) Notably, these later acquired practices would not have been included in setting the enumerated "Qualifying Annual Reference Lab Purchase Level" and "Qualifying Annual In-house Consumable Purchase Level" in the Parent Agreement.

Quite simply, it remains to be seen whether the preponderance of the admitted evidence will amount to a reasonably certain estimate that the Court can use to award IDEXX the higher amount of damages it seeks for Triple R's breach. See Eckenrode v. Heritage Mgmt. Corp., 480

A.2d 759, 765 (Me. 1984) ("Prospective profits are recoverable as damages only if the profits can be estimated with reasonable certainty.") However, the Court sees no basis for a pretrial order that restricts IDEXX from attempting to present evidence of lost profits. Thus, despite Defendant's suggestion that granting this Motion in Limine will result in a "condensed and streamlined" trial, the Defendant's Motion in Limine Regarding Measure of Plaintiffs' Damages (ECF No. 50) is DENIED WITHOUT PREJUDICE. Triple R may object to evidence at trial on any stated grounds and is free to renew its arguments regarding the reasonably certain measure of Plaintiffs' damages at the close of the evidence.

### 3. Plaintiffs' Motion in Limine to Exclude Extrinsic Evidence (ECF No. 51)

Plaintiffs ask the Court for a pretrial exclusion of "evidence and arguments related to an exclusive remedy or liquidated damages clause" and a declaration that the Parent Agreement is "unambiguous and fully integrated," such that "no extrinsic or parol evidence is admissible to interpret or alter" the Parent Agreement. (Pls. Mot. (ECF No. 51) at 2 & 10.) Defendant objects to this request and lays out an interpretation of the Parent Agreement that is diametrically opposite to Plaintiffs' interpretation. In Defendant's view, the Default provision of the Parent Agreement should be enforced as a "liquidated damages clause." Defendant also asks that this Court "reserve determination regarding the admissibility of any proffered extrinsic evidence on contract interpretation issues until [the evidence is] offered at trial." (Def. Response (ECF No. 47) at 6.)

The Court generally agrees with the approach suggested by Defendant and will adopt this approach by DENYING Plaintiffs' Motion in Limine to the extent that it seeks categorical exclusion of evidence. To the extent that Plaintiffs' Motion seeks application of the parol evidence rule upon a finding by the Court that the Parent Agreement is an unambiguous, integrated

agreement, the Court DENIES this request without prejudice, but notes that it will deal with the issue at trial.  See Handy Boat Serv., Inc. v. Prof'l Servs., Inc., 711 A.2d 1306, 1309 (Me. 1998) ("Application of the [parol evidence] rule requires an initial finding that the parties intended the writing to integrate their understandings concerning the subject matter of the agreement . . . .  To determine whether integration was intended and whether the scope of integration was complete or partial, the court may consider extrinsic evidence.")

The Court notes that it does appear that on its face the Parent Agreement contains an integration clause:

> [Y]ou [Triple R] agree that [the] terms and conditions [shown above and on the following pages of this Agreement], together with IDEXX's Directory of Services and Reference Laboratory Standard Terms and Conditions and any separate Confidential Disclosure Agreement . . . are a complete and exclusive statement of our agreement and supersede all prior pricing agreements, and that they may be modified only by written agreement and not by course of performance.

(Parent Agreement at IDEXX-0000122 (ECF No. 51-1 at PageID # 526).)

The Parent Agreement also contains a provision entitled "Default," which reads:

> If you [Triple R] fail to meet your Qualifying Annual Reference Lab Purchase Level or Qualifying Annual In-house Consumable Purchase Level obligations at any time, or if you breach your exclusivity or confidentiality obligations set forth in this Agreement, or if your account with any IDEXX company is delinquent, or it [sic] you breach any other term of this Agreement, then IDEXX may, at our election, terminate this Agreement and (1) invoice you for the difference between your actual spending and your and [sic] Qualifying Annual Reference Lab Purchase Level or Qualifying Annual In-house Consumable Purchase Level (as applicable) for the current year, but only up to the total of IDEXX Discounts that you have received as of the termination date (less any previously invoiced amounts) and (2) invoice you for a prorated amount of the Loyalty Payment equal to the number of months remaining under the Agreement Period at the time of termination.

(Parent Agreement at IDEXX-0000123 (ECF No. 51-1 at PageID # 527).)  Defendant asserts that this Default provision is the liquidated damages clause it seeks to enforce as the cap on Plaintiffs' damages.  At trial, it will be Defendant's burden, as the party seeking to enforce a liquidated

damages provision, to prove its interpretation of the clause's meaning, as well as the clause's validity, under the applicable two-part test. See, e.g., CIT Grp./Equip. Fin., Inc. v. ACEC Maine, Inc., 782 F. Supp. 159, 162 (D. Me. 1992) (explaining that liquidated damages clause is "enforceable only if, (a) the damages caused by the breach are very difficult to estimate accurately and (b) the amount so fixed is a reasonable forecast of the amount necessary to justly compensate one party for the loss occasioned by the breach of the other party" (internal quotation omitted)); Pacheco v. Scoblionko, 532 A.2d 1036, 1039 (Me. 1987) ("[T]he party seeking enforcement of a liquidated damages clause in a contract has the burden of proving its validity").

The Court notes that in its initial review of the record now available, the parties have stipulated that Triple R elected to breach its exclusivity obligations under the Parent Agreement, and there is no disagreement that Triple R did so by signing an exclusive contract with an IDEXX competitor. Given these circumstances, the Court fails to see how Triple R can invoke the Default provision as a limitation on IDEXX's available remedies for Triple R's breach. Nonetheless, the Court recognizes this issue as potentially dispositive and believes it is best resolved on a developed factual record, not a redacted motion in limine.

Therefore, the Court DENIES Plaintiffs' Motion in Limine to Exclude Extrinsic Evidence (ECF No. 51). The Court's denial is without prejudice to Plaintiff's renewing any specific objections at trial as evidence is presented. The Court anticipates issuing its final ruling on the application of the parol evidence rule to the Parent Agreement in connection with the issuance of its post-trial findings of fact and conclusions of law.

SO ORDERED.

/s/ George Z. Singal  
United States District Judge

Dated this 2nd day of August, 2016.